THE STATE, *Appellant*, v. LEE.

Division Two, January 19, 1897.

137   143
158    72

1. **Criminal Law**: POLICE POWER: SALE OF OPIUM.   The state may, under its police powers, regulate the sale of opium.

2. ——: ——: ——: CONSTITUTION.   Revised Statutes, 1889, section 3874, making it unlawful to maintain a place for smoking opium is not unconstitutional as being class legislation or otherwise violative of the rights of the citizen.

*Appeal from St. Louis Court of Criminal Correction.*— HON. DAVID MURPHY, Judge.

REVERSED AND REMANDED.

*R. F. Walker*, attorney-general, and *Thos. E. Mulvihill* for the state.

(1) The statute in controversy is constitutional; it falls under the police powers of the state.    Tiedeman, Police Power, sec. 85; *Washington v. Ah Lun*, 9 L. R. A. 395; Cooley on Cons. Lim., secs. 390–393.    (2) Section 1 of article 14 of the United States constitution contains no provision prohibiting the several states from regulating the callings of their respective citizens, and the supreme court of the United States, in construing this section, held that it does not limit the subjects in relation to which the police power of the state may be authorized for its citizens.    *Railroad v. Beckwith*, 129 U. S. 26; *Powell v. Penn*, 127 U. S. 678; *Railroad v. Humes*, 115 U. S. 512; *Soon Hing v. Crowley*, 113 U. S. 703.    (3) The court has also held that a statute prohibiting the sale and manufacture of intoxicating liquor does not violate the fourteenth amendment.    *Mugler v. Kansas*,

123 U. S. 623; *Kidd v. Pearson*, 128 U. S. 1; *Ex parte Smith*, 38 Cal. 702.  (4) The legislature has the power to pass laws looking to the prevention and suppression of an unhealthy practice, such as smoking opium. *In re Lee Tong*, 9 Saw. (U. S.) 333; *Ex parte Yung Jon*, 28 Fed. Rep. 308.

Burgess, J.—On the twenty-seventh day of January, 1896, there was filed in the St. Louis court of criminal correction an information, charging the defendant with setting up and maintaining an opium den in said city.   The material allegations of the information are as follow:

"That Leo Lee, in the city of St. Louis, on the twenty-sixth day of January, 1896, did unlawfully set up, maintain and keep a certain house and rooms therein, situated in the city of St. Louis and state of Missouri, and more particularly known as number 19 Eighth street, to be used for the purpose of smoking opium, and that on the date above mentioned said house and rooms therein situated were used by defendant for the purpose of smoking opium, contrary," etc.

On the thirtieth day of January, 1896, defendant filed his motion to quash the information, assigning as grounds therefor the following:

"1.   The information fails to state any offense under the laws of the state of Missouri.

"2.   The information fails' to state a cause of action against the defendant.

"3.   The information is so defective that it would not sustain a verdict.

"4.   The statute upon which the information is based is unconstitutional and void for the following reasons:

"A.   It is in conflict with the constitution and laws of the United States and state of Missouri, in this,

that it interferes with the inalienable rights of every American citizen as guaranteed by the constitution of the United States and the state of Missouri.

"B.    Because it is class legislation in restraint of trade and liberty.

"C.    Because it conflicts with section 1 of the fourteenth amendment of the constitution of the United States, in that it denies to this defendant equal protection with other citizens under the law.

"D.    It is not uniform or general in its application or rule for the regulation of any industry or line of business and is not clear, precise, or definite in its requirements or demands.

"E.    It is unreasonable, oppressive, and discriminating, and attempts to declare the use of opium an offense without any warrant and authority to base such edict upon.

"F.    That it declares opium to be a deadly drug, whereas it is in truth and in fact an agent of great curative properties and highly beneficial to the human system.

"G.    It is an attempt at sumptuary legislation in this, that it attempts to deprive the citizen of the use of an article that may be beneficial to the human system, and when found to be useful and beneficial to the human system, it attempts to prohibit the manner and method of its use."

The motion was sustained, and defendant discharged.    The state appealed.

Section 3874, Revised Statutes, 1889, provides that every person who shall set up, maintain, open or keep any house, room, or place, to be used for the purpose of smoking opium, hasheesh, or any other deadly drug, shall be deemed the keeper of an opium den, and on conviction be adjudged guilty of a misdemeanor, and fined not less than $100, and not exceeding $1,000.

It is unnecessary to say more with respect to the first three grounds assigned in the motion to quash, than that the charge is made substantially in the language of the statute, is sufficient, and charges defendant with an offense, unless the statute be invalid because of some one or more of the causes assigned under the fourth ground of objection.

They may all be considered together, as involving the rights guaranteed defendant under the constitution.

As the defendant is not represented in this court, we have not the advantage of any suggestion or argument which might be made in support of this assignment, and can only consider such matters as occur to us.

The law can not be considered class legislation, because prohibiting the keeping of an opium den comes within the police powers of the state, under which the legislature has the power to regulate or prohibit such occupation, in the advancement of public morals, health, and the safety of its citizens. There are many illustrations of this character on our statutes, wherein the right to exercise such police power by the legislature seems to be beyond question.

It is not only within the power of the state to do so, but it is its duty to protect its citizens, and advance the safety and prosperity of its people, and there can be no doubt as to the power of the legislature to pass laws like the one under consideration, designed to promote the morals and protect the community at large. Statutes prohibiting the sale of intoxicating liquors, to minors, on Sunday, playing cards on Sunday, prohibiting the setting up of gaming tables, and many others of like character have been upheld, because within the police powers of the state to regulate and prohibit such things, on the ground of their demoralizing tendencies.

State v. Lee.

The law does not prohibit the sale of opium by any particular class of persons, but prohibits the setting up, maintenance, or keeping of any house, room, or place to be used for the purpose of smoking opium by any and all persons, and can not in any sense be considered class legislation.

It is true that opium is often used as a medicine; so is whisky, but the right of the state under its police powers to prevent its sale altogether, except for medicinal purpose, is indisputable. The law does not prohibit the disposition of opium as a medicinal agent, but does prohibit its use as a kind of intoxicant, but it is not for that reason in restraint of trade.

In passing upon a somewhat similar statute, in *Ex parte Yung Jon*, 28 Fed. Rep. 308, it was said:

"Opium is a medicinal drug, and has never been used, and has no claim to rank, as a necessary of life. Its use has been mainly in medicine, as an anodyne; and is classed by science among the active poisons. In the east it has been used for centuries, by smoking and mastication, to produce a kind of intoxication; but, until lately, such use has been unknown in the United States and is now chiefly confined to the Chinese. In the American Cyclopedia (*verbum* 'Opium') it is said to be a vice 'less easy of detection than alcholic intoxication, which it is said to replace where law and custom have made the latter disreputable. Its evil effects are most manifest upon the nervous and digestive systems,' and its final results resemble *deliɩium tremens*. The sale or disposition of an article which is an active poison, and has no legitimate use except in medicine may be regulated accordingly. In my judgment, the act does not in effect prohibit the disposition of the drug, but allows it under such circumstances, and on such conditions, as will,

according to the general practice and opinions of the country, prevent its improper and harmful use.''

We are unable to see in what way the law is in restraint of trade, when the right to dispose of opium is considered with respect to the superior right of the state to regulate its disposition under its police powers.

In *Metropolitan Board v. Barrie*, 34 N. Y. *loc. cit.* 666, it was said:

''The right to legislate on a subject so deeply affecting the public welfare and security has not heretofore been questioned or denied; and it could not well be, for it would have been to deny the powers of government inherent in every sovereignty to the extent of its dominions. A state is not sovereign without the power to regulate all its internal commerce as well as police. The legislature exercises and wields these sovereign police powers, as it deems the public good to require. It is a bold assertion, at this day, that there is anything in the state or United States constitutions conflicting with or setting bounds upon the legislative discretion or action in directing how, when and where a trade shall be conducted in articles intimately connected with the public morals, or public safety, or public prosperity: or, indeed, to prohibit and suppress such traffic altogether, if deemed essential to effect those great ends of good government.    *    *    *    Is it not an absurd proposition, that such a law, by its own mere force, deprives any person of his liberty or property, within the meaning of the constitution, or that it infringes upon either of these secured private rights? Yet this is the only ground its violators can occupy to raise any question as to its validity. They are restrained of no *liberty* except that of violating the law by engaging in a forbidden traffic; and the assumption is not even plausible, that the act works a *deprivation* of the property to anyone.''

"Under the police power and in the interest of good morals, the good order and peace of society, for the prevention of crime, misery, and want, the legislature has authority to place such restrictions upon the sale or disposal of opium as will mitigate, if not suppress, its evils to society." *State v. Ah Chew*, 16 Nev. 50.

The law does not deny to the defendant equal protection with other citizens; is not unreasonable or oppressive, nor does it in any way infringe upon any rights guaranteed to him by the constitution. *Territory v. Ah Lim*, 9 L. R. A. (Wash.) 395.

From these considerations it follows that the judgment must be reversed and the cause remanded for further trial. GANTT, P. J., and SHERWOOD, J., concur.