## THE STATE v. THAYER, Appellant.

### In Banc, June 30, 1900.

1. **Appeals:** EXISTENCE IN CRIMINAL CASES. An appeal in criminal cases was unknown to the common law, and if it exists at all in a given case, it is by virtue of some constitutional provision or statutory enactment.

2. ———: CONVICTION ON INFORMATION. An appeal lies for the defendant from a conviction in the circuit court of a misdemeanor on information, and also from a like conviction in the criminal court of Jackson county. (*Overruling State v. Brown, 153 Mo. 578.*) (SHERWOOD, BURGESS, and MARSHALL, JJ., dissent.)

3. **Conviction Under Unconstitutional Law.** One who has been convicted under a legislative enactment declared by the Supreme Court to be unconstitutional, is entitled to his discharge.

PER MARSHALL, J., DISSENTING.

**Appeals:** CONVICTION ON INFORMATION: APPEAL BY STATE. Neither the State nor the defendant is entitled to an appeal from a conviction founded on an information in the circuit court. Besides, it is inconsistent to hold that the statute gives the defendant a right to an appeal from a judgment based on a properly drawn information, but

State v. Thayer.

denies it to the State, and if State v. Brown, 153 Mo. 578, which denies an appeal to the defendant, is to be overruled, then also should State v. Carr, 142 Mo. 607, and State v. Cornelius, 143 Mo. 179, which deny the State the right to appeal, be also overruled. (SHERWOOD, J., concurring.)

PER SHERWOOD, J., DISSENTING.

Appeals: A STATUTORY RIGHT. An appeal is purely a right and a creature of the statute, and no such right or creature exists unless it be affirmatively granted by the statute. And neither section 2482, Revised Statutes 1899, nor any other section of the statute, gives either the State or the defendant an appeal from a judgment founded on an information, and the cases of State v. Carr, 142 Mo. 607, State v. Cornelius, 143 Mo. 179, and State v. Brown, 153 Mo. 579, are all harmonious and consistent on this point. (BURGESS, J., concurring.)

Appeal from Jackson Criminal Court.—*Hon. Jno. W. Wofford,* Judge.

REVERSED.

*John L. Peak, Grant J. Rosenzweig* and *Boyle, Priest & Lehmann* for appellant.

*Edward C. Crow,* Attorney-General, for the State.

BRACE, J.—This is an appeal from a judgment of the criminal court of Jackson county, at Kansas City, imposing a fine of $100 upon the defendant, convicted in that court, upon the information of the prosecuting attorney, of a misdemeanor, in violating the act of the General Assembly "approved May 16th, 1899," entitled, "Department Stores in cities with 50,000 inhabitants or over." [2 R. S. 1899, ch. 91, art. 18; Laws of 1899, p. 72.] The case was advanced and heard with the case of State ex rel. Wyatt v. Ashbrook, 154 Mo. 375, in which that act was held to be unconstitutional. So that the only question for determination now in the case is, whether under the statutes of this State an appeal by the defendant will lie from his conviction in that

court of a misdemeanor, *on information*. For it may be conceded at the outset that the remedy by appeal in criminal cases was unknown to the common law, and if it exists at all in a given case, it is by virtue of some constitutional provision or statutory enactment.

In the act establishing the criminal court of Jackson county, it is provided that "appeals from final decisions and judgments of the court hereby established, and writs of error from the Supreme Court to said criminal court, shall be allowed and prosecuted in the same manner and with like effect in all respects as is provided by law in cases of appeals from or writs of error to circuit courts in criminal cases." [2 R. S. 1899, p. 2566, sec. 3; Laws 1871, p. 110.]

Misdemeanors may be prosecuted in the circuit courts of this State either by indictment or information (R. S. 1899, chap. 16, art. 3), and in that article, by sec. 2482, it is provided, that "the trial and all proceedings upon any information filed in a court of record shall be governed by the law, and practice applicable to trials upon indictments for misdemeanors"  *  *  *  and by section 2696, article 10, of the same chapter, it is provided, that "in all cases of final judgment rendered upon any indictment, an appeal to the Supreme Court shall be allowed to the defendant if applied for during the term at which such judgment is rendered."

Chapter 16, entitled "Criminal Cases, Practice and Proceedings," constitutes our code of criminal procedure, and provides the practice in such cases from the incipient charge through arrest, preliminary examination, trial in the circuit court, review in the appellate court, to the final disposition of the case by execution. Section 2482 and section 2696 of that chapter here placed in juxtaposition, according to well-recognized rules of statutory construction must be read in connection with each other, and with the whole code or system of which they form a part. And as

by section 2696 on the trial of misdemeanors in the circuit court by indictment the remedy of appeal is expressly allowed, and made applicable to such trials, and by section 2482, "the trial and *all proceedings* on information in such cases are to be governed by the *law and practice* applicable to trials upon indictment," it would seem necessarily to follow that an appeal was intended to lie as well in the case of a prosecution by information as by indictment. This construction, flowing *ex vi termini* from the text of the statute must prevail unless in the history of the legislation and the circumstances of the introduction of these two methods of prosecution into our code, some reason be found for a different construction.

By section 14, article 13, of the Constitution of 1820, it was provided "that no person can, *for an indictable offense*, be proceeded against criminally by information, except in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger, or by leave of the court, for oppression or misdemeanor in office," and this provision in the same language, remained intact in the organic law (Constitution of 1865, art. 1, sec. 24), until the adoption of the Constitution of 1875, when it was changed to read as follows: "That no person shall, *for felony*, be proceeded against criminally, otherwise than by *indictment*, except in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger; in all other cases, offenses shall be prosecuted criminally by *indictment or information as concurrent remedies*." [Constitution 1875, art. 2, sec. 12.]

By the statutes first enacted under the Constitution of 1820, all misdemeanors were indictable offenses. [1 Revised Laws 1825, p. 314, chap. 2, and p. 139 et seq.] But no provision was made for an appeal by the defendant from a conviction of a criminal offense in the circuit court in any

State v. Thayer.

case. whether felony or misdemeanor. Hence the appellate jurisdiction conferred upon the Supreme Court by the Constitution was and could only be exercised by means of a writ of error or other common law writ (Jim v. State, 3 Mo. 147; Calloway v. State, 1 Mo. 211), and this continued to be the only method by which a review could be had in the appellate court by the defendant upon conviction of any criminal offense in the circuit court, until the revision of 1835, when section 2696, *supra*, was adopted and incorporated into the Code of Criminal Procedure, by the revision of that year, as section 1, article 8 (R. S. 1835, p. 498). The only change made in the section since, was by the revision of 1845, section 1, article 8, page 888, when the words "the defendant" omitted in the revision of 1835, were inserted between the words "allowed" and "if," making the section read as it does now, and ever since has read in the statutes.

Another change in the existing law was made in the revision of 1835, by the adoption of the following provisions (R. S. 1835, p. 372, sec. 1): "Hereafter, no assault, battery or affray, shall be indictable; but all such offenses shall be prosecuted and punished in a summary manner, before justices of the peace, as hereinafter provided." And section 2 reads: "The jurisdiction of justices of the peace shall not extend to trial or punishment in any case of riot, rout, or unlawful assembly, nor to any assault or battery which, by the then existing laws, may be punished by imprisonment, or corporal punishment, or by a fine exceeding one hundred dollars, but all such offenses shall be punished by indictment."

The subsequent sections of said enactment provide for the prosecution of this petty class of offenses thus limited upon view of the justice or upon written complaint and affidavit of a citizen, and for an appeal to the circuit court upon conviction before the justice. Leaving out of view certain

provisions for the summary trial and punishment of offenses by slaves, which lend no assistance to this investigation, with the exception of these petty offenses made cognizable before a justice of the peace, all other misdemeanors were indictable offenses, and as they could be prosecuted only by indictment, when section 2696, as originally enacted, became operative, it afforded a remedy by appeal to every person convicted in the circuit court of a misdemeanor, except such persons as might therein be convicted on appeal from a justice of the peace, of some of the petty offenses mentioned above, the penalty of which was by fine only, and the fine less than one hundred dollars. For which cases no remedy by appeal to the Supreme Court being provided, by the statute, they were left in the same condition as were all criminal cases before the enactment of this section, reviewable as at common law. The law of criminal procedure remained substantially in this condition until the adoption of the Constitution of 1875. At the next General Assembly after the adoption of that Constitution for the purpose of carrying into effect the provisions of article 2, section 12 thereof, it was enacted that, "hereafter all misdemeanors shall be prosecuted in the courts having jurisdiction thereof, either by indictment, as now provided by law, or by information as provided by this act, as concurrent remedies" (Laws 1877, p. 354, sec. 1), and by section 10 (page 356) of that act it was provided, that "the trial and all proceedings upon any information filed under the provisions of this act shall be governed by the law and practice applicable to trials upon indictments for misdemeanors so far as such law and practice can be made applicable thereto." Thus was prosecution for misdemeanors by information introduced into our criminal code; section 10 of this act with slight verbal changes, becoming section 2482 of the Revised Statutes 1899, now under consideration. And thus it was first pro-

vided by statute that while theretofore all misdemeanors had been prosecutable only by indictment, thereafter they might be prosecuted either by indictment or information, as concurrent remedies. If nothing more had been said, as the right of appeal by the defendant was a part of the remedy by indictment in the then existing law, a strong presumption would arise that the same right was intended to be secured to the defendant in the new proceeding that was thereafter to be concurrent with the old one; otherwise the new would not run consistently with the old, and the citizen might be deprived of a very essential right secured to him by the former remedy, simply by the adoption by the prosecutor of the later one, thus in this particular destroying the concurrency of the two, and putting this right within his discretion and at his mercy, and A. prosecuted for a misdemeanor by indictment would have the right of appeal, while B. prosecuted by information for the same offense would have no such right—a vicious power of discrimination which should always be presumed against. The right was not left, however, in the domain of presumption, but put beyond question by the express provision that all proceedings on information should be governed by the law and practice applicable to trials upon indictment as far as the same could be made applicable thereto. And as by the law and practice then existent applicable to trials of misdemeanors upon indictments, to which the section refers, an appeal was allowed the defendant, upon conviction in the circuit court, and as such allowance is just as applicable to a conviction on information as on indictment, the right thereto is as clearly given as if it had been written into the then existent law, in so many words. In the course of revision, section 10 of the original act, now section 2482, Revised Statutes 1899, has been somewhat condensed. But the provision of the Constitution in pursuance of which it was enacted, is

the same, and the section itself remains the same in purport and meaning as in the beginning. Since which time many cases of appeal by defendants from the circuit court on convictions of misdemeanors, have come to this and the other appellate courts of the State and these courts have invariably, for the last quarter of a century, exercised their appellate jurisdiction in such cases. While the right of appeal under the statute in these cases was not questioned, and they can not therefore be regarded as authority for its existence, nevertheless they furnished strong persuasive evidence that such has been the uniform construction of these statutes by the courts and the profession from the beginning.

Our attention is called, however, by the Attorney-General to four cases which he contends militate against this construction. In the first of these, State v. Clipper, 142 Mo. 474, it was held that *the State* was not entitled to an appeal in a prosecution on information. The ruling involved the construction of sections of the statute other than those now in question, and is not in point. In the next case, State v. Carr, 142 Mo. 607, it was held that *the State* is not entitled to an appeal or writ of error on the quashing of an information, and this case, like the former, turned upon the construction of sections of the statute other than those now under consideration, and is not in point. The same may be said of the third case, State v. Cornelius, 143 Mo. 179. These cases treat of the right of *the State* in criminal prosecutions, but do not touch the right of the defendant in such prosecutions. The fourth case, State v. Brown, 153 Mo. 578, is however directly in point, for in that case it was held that an appeal would lie for the defendant upon a conviction in the circuit court of a misdemeanor on information. This ruling was based solely on section 4277, Revised Statutes 1889, now section 2696, *supra*, treated independently and without any consideration of section 4062, Revised Statutes

1889, now section 2482, *supra*. But when these two sections are considered together in their proper relation to and bearing upon each other, and construed in connection with the code of criminal procedure, of which they form constituent parts, in the light of the circumstances attendant upon their introduction into that code as disclosed by their legislative history, the conclusion, it seems to us is irresistible, that an appeal does lie for the defendant from a conviction in the circuit court of misdemeanor on information, that State v. Brown, *supra*, should be overruled, and that the judgment of the criminal court of Jackson county in this case should be reversed and the defendant discharged. It is accordingly so ordered. All concur, except *Sherwood, Burgess* and *Marshall, JJ.*, who dissent.

MARSHALL, J. (*dissenting*).—I dissent from the opinion in this case for the following reasons:

*First*: The case of State v. Brown, 153 Mo. 578, holding that an appeal by the defendant will not lie from a conviction on an information is entirely consistent with the cases of State v. Carr, 142 Mo. 607, and State v. Cornelius, 143 Mo. 179, which hold that an appeal by the State will not lie when an information is quashed or adjudged insufficient.

*Second*: Section 2696, Revised Statutes 1899, allows a defendant an appeal from a conviction on an *indictment*. Section 2709, Revised Statutes 1899, allows an appeal to the State if an *indictment* is quashed or adjudged insufficient on demurrer. Construing these sections this court held in the Carr and Cornelius cases, *supra,* that they applied only to *indictments,* and that this court could not read the word *"information"* into the statute, so as to allow an appeal to the State when the information is quashed or adjudged insufficient on demurrer, and in the Brown case, *supra,* that no appeal lies by defendant from a conviction on an information.

*Third*:   Section 2482, Revised Statutes 1899, provides that the trial and proceedings upon any information shall be governed by the law and practice applicable to trials upon indictment for misdemeanor, and upon the faith of this provision it is held in this case that an appeal will lie by defendant from a conviction on an information.   The effect of this is to overrule State v. Brown, but to leave the Carr and Cornelius cases still in force, and to give an appeal to a defendant and to deny it to the State.

An appeal did not exist as to either party at common law.   It is wholly immaterial that a right of appeal was granted to a defendant long before the State was given a right of appeal, when the indictment is quashed or adjudged insufficient, for the right exists now as to both in case of indictments, and if section 2482 gives the same right to a defendant to appeal from a conviction upon information that section 2696 gives him in case of a conviction on an indictment, it logically and irresistibly follows that section 2482 also gives the State the same right to appeal, if the information is quashed or adjudged insufficient on demurrer, that section 2709 gives the State if an indictment is quashed or held insufficient on demurrer.

It also logically follows that if the Brown case is overruled, the Carr and Cornelius cases should also be overruled. To be consistent all three cases should stand or be overruled. It will not do to say that the right of the State to appeal is not involved in this case, and hence it is not necessary to determine that right now, for it is as much the duty of this court to be consistent as it is to dispose of any particular case or question—as much its duty to prevent confusion by perspicuity, harmoniousness and comprehensiveness of decision as it is to decide any case.   Technically and by strict construction, the Brown, Carr and Cornelius cases are properly decided.   But if section 2482 reads the word "information"

into section 2696, common consistency requires that it should also be read into section 2709. To do the one and not the other, as this case does, is unjust to the bar, the lower courts, and the State, and falls short of the duty of this court. *Sherwood, J.*, concurs herein.

SHERWOOD, J. (*dissenting.*)—From the conclusion announced in the majority opinion I dissent. The Attorney-General has filed an admirable brief in this cause, in which he collected a great array of authorities, everyone announcing in terms or in effect, the principle that as an appeal is purely a *right* and a *creature of the statute*, that no such right or creature *exists* unless it be *affirmatively granted by the statute which creates it.*

None of these authorities, though directly in point, have been cited, noticed or discussed in the majority opinion. It is sometimes easier to ignore a long array of pointed and pertinent authorities, than to meet them and overthrow them by argument.

It has been asserted in the majority opinion that in the State v. Brown, 153 Mo. 578: "This ruling is based on section 2696, *supra*, treated *independently and without any consideration* of section 2482."

What foundation there is for this assertion will be found when you examine State v. Brown, *supra*, where direct reference is made to State v. Carr, 142 Mo. 607, where it is very plainly and distinctly said, on a motion for rehearing: "Now, as to the second ground suggested, to-wit, that our decision is in conflict with an express statute, to-wit, that section which provides that 'the trial and all proceedings upon any information filed in a court of record shall be governed by the law and practice applicable to trials upon indictment for misdemeanor.' [Revised Statutes 1889, sec. 4062.] This section evidently relates to *trials* and their *ordinary incidents*

when the charge is contained in an *information*. It does not relate in the remotest manner to the process of appeal or error. The two ways provided and the *only* two ways provided for that purpose are to be found in the sections heretofore quoted and they are to be found in article 10 of the same chapter (48) under the appropriate title of 'Appeals and Writs of Error.' "

Having, when the opinion in State v. Carr was written so recently before that, construed and passed upon section 4062, now section 2482, in Carr's case, as just pointed out above, it did not seem necessary to do more than to cite that case in Brown's case—inasmuch as it belongs to ruminants alone to regurgitate their food; man does not. So that when you turn to Carr's case, you discover that instead of the ruling in Brown's case, being "based solely on section 2696, treated independently," etc., section 2482 *was* considered and referred to, by referring to Carr's case, where that section is discussed. Besides, it shall not escape observation, that while section 2482, relating to *informations,* is located in article 3, page 664, Revised Statutes 1899, section 2696 treating of *indictments,* is located in article 10, page 698, Revised Statutes 1899, entitled, *"Appeals and Writs of Error,"* and section 2709, of the same article, is the one which grants the State an appeal; and the provisions for granting the State or an individual an appeal or writ of error, are also to be found located in the same article, and *nowhere else.* Is it not rather odd that the Legislature during so many revisions as our statutes have undergone, have so sedulously confined appeals and writs of error to article 10, where *indictments* alone are spoken of, and never said appeal or writ of error to *informations*? Is this the result of accident, or of well arranged and predetermined design?

But no matter in what originating, it is certain from all authorities that *no appeal lies except where expressly granted.*

*Not a single case to the contrary can be found in the whole* range of jurisprudence, or of judicial procedure. I leave off by saying that I adopt, as and for the residue of my opinion, the brief of the Attorney-General *in full,* and desire it to accompany this case, as showing *how futile his labors have been.*

*Burgess, J.,* concurs with me.

### Brief of Attorney-General.

Counsel for appellant urge that because in many instances appeals have been taken from judgments of conviction on misdemeanors, and the Supreme Court has passed on the cases, and the jurisdictional question has been passed *sub silentio,* therefore this court should hold that it now has jurisdiction. In other words, that because this court has assumed jurisdiction heretofore, that it ought not now to admit its error, but to maintain it was right by still assuming jurisdiction.

The Federal Supreme Court has had this question of jurisdiction being passed *sub silentio* before it, and has rendered decisions upon the effect of a court assuming jurisdiction where none existed.

In the case of Cannon v. United States, 116 U. S. 55, the Federal Supreme Court, without objection, decided upon the merits of a writ of error to the Supreme Court of the territory of Utah sued out by one convicted of a crime which was neither bigamy nor polygamy, nor punishable with death, but in which case the defendant below had been convicted under the statute and had been sentenced to six months imprisonment and to pay a fine. The statute under which the defendant was convicted was one directly amending the statute against bigamy or polygamy in the territory of Utah. The statute which was amended allowed an appeal on a conviction for bigamy or polygamy. The amendment to the statute created an offense described in the statute of cohabiting

with more than one woman, and was not legally either bigamy or polygamy. This same statute came under consideration again in 118 U. S. 346, where the defendant had been convicted and sentenced to imprisonment for six months and fined $300. The question was raised that the Supreme Court had no jurisdiction because no statute expressly authorized an appeal in this class of cases. The offense of which the defendant was convicted was cohabiting with more than one woman. The statute was directed at the practice of polygamy in the territories of the United States. The statute before its amendment provided that if a defendant was convicted by bigamy or polygamy a writ of error should lie. The amendment did not take away the right of appeal in case of bigamy or polygamy. The Supreme Court held that the statutory offense described in the amendment to the statute, of cohabiting with more than one woman, was not identical with the offense of bigamy or polygamy, and although the statute authorized a writ of error to lie in case of a conviction of bigamy or polygamy, as no express statutory authority was given for an appeal under the law prohibiting cohabitation with more than one woman, therefore no appeal could be had, and the Supreme Court had no authority to entertain the appeal because it had no jurisdiction in the case.

The counsel for the appellant in that case urged that the court had taken jurisdiction of the case of the United States v. Cannon, 116 U. S. 55, and affirmed the judgment of conviction under the same act of 1882, but the court said: "The question of jurisdiction was not considered in fact in that case, nor alluded to in the decision, nor presented to the court by the counsel for the United States, nor referred to by either party at the argument or in the briefs. . . . . . . . But as the . . . . . . . want of jurisdiction is clear we have decided to vacate our judgment and recall the mandate and dismiss the writ of error for want of jurisdiction."

The counsel for appellant in the case at bar urge that the question of jurisdiction was not presented to the court or in the brief of counsel in the cases referred to by them which have been before this court on appeal from conviction on information, and argue, therefore, this court should be precluded from deciding now that it has no jurisdiction. But the United States Supreme Court says that the very fact that the question was not raised by counsel in argument, or in the briefs, nor in any manner called to the attention of the court, is the reason why the former action of the court in assuming jurisdiction should not be sustained, and that when the question of jurisdiction is raised the court should declare what the law is, rather than what the counsel or the court think the law ought to be.

In the case of United States v. Sanger, 144 U. S. 310, the Supreme Court again decided that no appeal could be taken in a criminal case unless expressly authorized by a statute. The court in this case cited and approved the opinion heretofore referred to in 118 U. S. 346-354, holding that the fact that a court may have passed upon cases in which it had no jurisdiction did not authorize it to continue to do so.

In 1803 the Federal Supreme Court, no objection being made, took jurisdiction of a writ of error sued out by the United States to the Circuit Court for the District of Columbia in a criminal case.   [1 Cranch, p. 252.]   But in 1805, in another case, the United States Supreme Court, upon full argument and consideration, held that it had no jurisdiction of a writ of error in a criminal case and overruled the case in 1 Cranch, p. 252.   Chief Justice MARSHALL, speaking for the court, said: "No question was made in that case (referring to the case in 1 Cranch, p. 252), as to the jurisdiction. It passed *sub silentio* and the court does not consider itself bound by that case."   [United States v. Moore, 3 Cranch, pp. 159-172; United States v. Sanger, 144 U. S. 144.]

The counsel for appellant insists strongly that in a majority of the cases that have come to this court on appeals from conviction on an information, the court did not pass upon the question of jurisdiction, and that therefore the jurisdiction exists. The question of jurisdiction has been raised in but four cases, and in those four cases it has been held that the court had no jurisdiction. The very reason counsel for appellant urge as grounds for the court's having jurisdiction now, to-wit, because its jurisdiction has been usually unquestioned, is the exact reason, the Federal Supreme Court says, why such cases acted on *sub silentio* as to jurisdiction are not binding on a court, and constitute no authority for sustaining jurisdiction. The case in 3 Cranch, pp. 159-172, is an authoritative declaration by the Federal Supreme Court that a court will not be bound by a case in which the question in issue is not considered by the court in deciding the case. In other words, unless a court examines and decides a question it has not judicially passed on it, and therefore, no matter how many times *sub silentio* a court has passed a question by, the court will not be bound by such action. The only argument appellant's counsel make in the case at bar, for the court to assert its jurisdiction and allow appeals, is, that so many times appeals have been taken from convictions on informations and the question of jurisdiction passed *sub silentio,* that now it is too late to raise the question. But this very fact of the jurisdictional question not being raised is the legal reason why the many cases cited by counsel for appellant are not authority to sustain the right of appeal. [United States v. Moore, 3 Cranch, pp. 159-172; United States v. Sanger, 144 U. S. 144; 118 U. S. 346.] ·

Can it be said this court has sustained the right of appeal from conviction on an information in many cases, when an examination of the very cases cited show the question was not even raised? The cases cited by counsel for appellant

State v. Thayer.

from the Missouri Reports to sustain the right of appeal from conviction on an information all show that the question of jurisdiction was not raised or discussed or decided by the court, and under the rulings of the Federal Supreme Court, and of all other courts so far as I am aware, if this court has erroneously entertained cases of this kind it is the court's duty to correct the mistake when its attention is directed to it. When a case arose in which a prior decision was attacked on the ground that it had no support from the cases wherein it was purported to be derived, the Supreme Court of Pennsylvania yielded, and said, in regard to the right and duty of the court to correct errors when practicable:

"Do we violate the doctrine of *stare decisis* by now correcting the mistake and going back to the well-established doctrine which that case has disturbed? . . . . . . . The conservatism that would make the instance of to-day the rule of to-morrow, and thus cast society in the rigid moulds of positive law in order to get rid of the embarrassing but wholesome diversities of thought and practice that belong to free, rational and imperfect beings; and the radicalism that in ignorance of the laws of human progress and disregard of the rights of others would lightly esteem all official precedents and general customs that are not measured by its own idiosyncrasies—each of these extremes always tends to be converted into the other, and both stand rebuked in every volume of our jurisprudence.

"And the medial aspect of the doctrine stands everywhere revealed as the only practical one. Not as an arbitrary rule of positive law attributing to the mere memory of cases higher honor and greater value than belong to the science and natural instinct and common feeling of right: Not as withholding allowance for official fallibility and for the changing views, pursuits and customs that are caused by and that indicate an advancing civilization: . . . . . .

"When the varied surface of this earth is changed into a dead level and the ocean waves are still, then man will need another habitation. And when the variety of human action and development is subjected to judicial and legislative prescription, and the rule of man's free and educated reason is prescribed with all its improving diversities, and all reasoning becomes illegal . . . . . . . . then man will need another jurisprudence and another legislation, without perhaps being capable of enjoying them."

Our own Supreme Court, volume 142, page 611, in an opinion in which the whole court concurred, rendered at the October term, 1897, decided that where a question of jurisdiction was passed *sub silentio* in a case, that the case had no authoritative value as a precedent. ' The following language was used by the court when it was urged that the court had taken jurisdiction of a similar case in 107 Mo. 1, to-wit: "But there the objection we took in this case to the State's bringing error upon the quashing of an indictment and only on quashing an indictment, was entirely unnoticed, either by court or counsel, and consequently the ruling in that case has no authoritative value in the case at bar." [State v. Carr, 142 Mo. 611.]

Appeal is purely of statutory origin and is a statutory right. No right to appeal exists except where the statute expressly authorizes it, and an appeal is never allowed unless some statute has expressly conferred the right thereto. [State v. Rowe, 22 Mo. 328; In re Bauer, 112 Mo. 231; City of St. Louis v. White, 99 Mo. 475; State v. Brown, 55 S. W. Rep. 76; State v. Woodson, 128 Mo. 514; State v. Clipper, 142 Mo. 474; State v. Carr, 142 Mo. 607; 142 Mo. 179; Southern Statutory Construction, pp. 326, 328; McGuire v. Ass'n, 62 Mo. 346; 1 Bishop's Crim. Procedure, sec. 1254; Floyd v. State, 7 Tex. 215; Ex parte Kearney, 7 Wheaton 38; 6 Ind. 423; 7 Cranch 708; 4 Barnwell & Anderson's Reports,

State v. Thayer.

521; Ward v. People, 13 Ill. 635; 3 Blackstone's Commentaries, 402; 1 Am. and Eng. Ency. of Law, 616; 99 Mo. 476; Ex parte Cosner, 4 Tex. Court of App. 89; Cran v. U. S., 145 U. S. 571; 1 Tex. 438; Chicago, Rock Island & Pac. Ry. Co. v. Dey, 76 Ia. 282; 41 Ill. App. 112; 32 Ill. App. 57; 10 N. Y. 353; U. S. v. Norse, 6 Peters, 495; Farnsworth v. Mustand, 129 U. S. 104; 153 U. S. 687; 102 Ind. 1; 2 Chitty's Gen. Prac., 215; Tierney v. Dodge, 9 Minn. 66; King v. Jukes, 8 T. 542; King v. Morler, 2 Bur. 1042; Raser v. Marlow, R. N. Charlt. (Ga.), 543; 25 Pa. St. 473; Queens v. Eduljee Byranjee, 5 Moore's Rep. 289; King v. Scone, 6 East, 514.]

In the case of McKane v. Dunston, 153 U. S. 687, the defendant had been convicted in the lower court in New York and appealed to the Supreme Court of the State, and the statute of New York provided that it was discretionary with the court whether a stay of execution pending the appeal should be granted. The court refused to stay the execution, and the defendant was sent to the penitentiary; he applied for a writ of *habeas corpus* and insisted that it was a violation of his rights under the Federal Constitution not to allow him bail pending his appeal. The Federal Supreme Court, in speaking of the right of appeal in this case, said: "An appeal from a judgment of conviction is not a matter of absolute right. Independently of constitutional or statutory provision allowing such appeal, a review by an appellate court of the final judgment in a criminal case, however grave the offense of which the accused is convicted, was not at common law, and is not now, a necessary element of due process of law." [McKane v. Dunston, 153 U. S. 687.] In 1821, in case of King v. Hanson, Court of King's Bench decided that an appeal does not lie in a criminal case unless expressly given by statute. [4 Barnwell & Alderson's Reports, p. 521.]

An appeal does not lie in any case in the absence of a statu-

State v. Thayer.

tory provision, and this was so held in the Supreme Court of Illinois where a conviction had been had for retailing intoxicating liquor. [Ward v. People, 11 Ill. p. 635, dated 1852.] The right of appeal was unknown at common law. It is regulated wholly by statute. [3 Blackstone's Commentaries, p. 402; 1 Am. & Eng. Ency. of Law, p. 616; 112 Mo. 231.] The plaintiff can not appeal from a judgment in favor of the defendant in an action to enforce a city ordinance where no statute expressly authorizes such an appeal. [St. Louis v. Marchel, 99 Mo. 476.] While the legislature may not properly deprive litigants, of their right to have such causes reviewed by this court as fall within its constitutional jurisdiction, yet the mode to be pursued in obtaining such review is a proper subject of legislative regulation. And where an efficient method is provided by a writ of error or as here by *habeas corpus* no constitutional right of the defendant can be infringed by the omission of the legislature to provide for an appeal. The appellate court has no jurisdiction unless the right of appeal is expressly given. [Ex parte Cosner, 4 Texas Court of Appeals, 89.] The appellate court can not create the right by legal intendment unless the legislative intent clearly appears. [Cran v. United States, 145 U. S. 571; 42 California 52; 36 Md. 694.] The right of appeal does not exist in equity unless expressly given. And provisions for appeals in court of law do not extend to appeals from decrees of courts of equity. [36 Md. 615.] No appeal exists except where the statute expressly authorizes it. [1 Texas 438.] The fact that an appeal is allowed in indictment and not in information clearly shows the general assembly intended there should be no appeal in these cases. [1 Texas 438.] It is insisted in this case that the right to appeal from a conviction on an information is a matter of great public importance, and therefore the Supreme Court should take jurisdiction of such cases. But the rules of law require that they be applied

equally to all cases.   The rules of law can not be suspended
to accommodate, aid or satisfy the public or any public inter-
est.   The rule of law is that no right to appeal exists unless
it is given by a statute.   The fact that questions of grave
public importance are at stake does not authorize a court
to take jurisdiction of a case and decide the matter.   [Chic-
ago, R. I. & P. R. Co. v. Dey, 76 Iowa 282.]   Only under
statutes is appeal known to the criminal law.   [1 Bishop's
Criminal Procedure, sec. 1254.]   In the absence of statute,
appeal can not be taken, and accordingly it has been held in
Texas that appeal will not lie on a judgment of the district
court punishing a witness by fine or imprisonment for con-
tempt in refusing to give evidence before grand jury.   [Floyd
v. State, 7 Texas 215; Ex parte Kearney, 7 Wheaton 38; 6
Ind. 423.]   In Kentucky previous to 1854 no appeal was al-
lowed in cases of felony, but the judgment of the circuit
court in such cases was final.   [15 B. Monroe 534; 5 Dana
219.]   In Missouri upon demurrer by the prosecution to spe-
cial plea of the defendant, judgment being rendered for the
defendant, no appeal lies.   [State v. Rowe, 22 Mo. 328.]   In
case of Queen v. Eduljee Byranjee, 5 Moore's Reports 289,
as late as 1846, it was expressly ruled that in absence of
statute in England no right of appeal in felonies has ever
existed.   In King v. Skone, Court of King's Bench, 6 East
514, it was ruled that no appeal would lie on a conviction
before two justices of the peace for a penalty in respect to
a malt duty, because no statute authorized it.   In State v.
Francis, 3 Ohio St., 277, the Supreme Court of Ohio decided
that no appeal would lie on an application to redeem land
sold for taxes, because the statute did not authorize an ap-
peal in such cases.   In United States v. Goodwin, 7 Cranch
456, which was a case for $15,000, as penalty for not en-
tering goods at prime cost, at place of exportation, with intent
to defraud the revenue, the United States Supreme Court

decided that no appeal would lie because the statute did not expressly authorize it. The Constitution expressly provides that the Supreme Court shall have only appellate jurisdiction except as otherwise provided in the Constitution. The law is, no presumption of jurisdiction attaches to appellate tribunals. [2 Ency. Plead. and Prac., p. 21; Hite v. Hansel, 39 La. Ann. 113.] The burden rests upon the appellant to bring himself within a reasonable construction of the statute. [Hite v. Hansel, 39 La. Ann. 113.]

### Express Jurisdiction.

The jurisdiction being conferred on an inferior court, the right of appeal from its decision must be expressly given. It will not be implied. [Excelsior Electric Co. v. Chicago Waifs' Mission, 41 Ill. App. 112.]

### Legislative Control of Statutory Right.

Where not granted by the constitution the right of appeal is purely a privilege and not a vested right. [Mayne v. Huntington Co., 123 Ind. 132; Davis v. Rupe, 114 Ind. 588; 102 Ind. 1; 41 Ill. App. 112; 41 Ill. App. 116; 7 Wallace (M. S.) 506; 47 Kansas 29.] Being a privilege and not a vested right, the privilege of an appeal pertains to the remedy and may be modified, abolished or revived by the Legislature at discretion. The Supreme Court of Illinois, referring to the right of appeals, uses the following language: "It may be well said that an appeal will not lie in a given case because there is no statute allowing it. It can not be so said of the writ of error. One is a favor granted by a statute, the other is a right in all cases civil and criminal." [Hammel v. People, 32 Ill. pp. 446-464.]

### Courts Correct Existing Errors When Aware of Them.

The rule of *stare decisis* does not apply. When by a long course of decisions a rule of property has been estab-

State v. Thayer.

lished and acted upon and rights have vested under it, the
enforcement of the maxim of *stare decisis* becomes almost
imperative. [44 Mo. 204; 49 Mo. 244; 79 Mo. 644.]   But it
is not so where vested rights are not affected.   Courts of last
resort have often found it necessary to reverse their own
rulings when they have found a former decision is unfounded
in law.   [76 Mo. 50.]   In Marvin v. Bates, 13 Mo. 152, a
prior construction of the statutes of limitation was set aside
and a new one adopted.   In Hamilton v. Marks, 63 Mo. 172,
the rule as to what constitutes a *bona fide* holder of commer-
cial paper was modified by overruling a prior decision.   In
Boogher v. Life Association, 75 Mo. 319, it was held contrary
to a previous ruling that a corporation can be sued for mali-
cious prosecution.   And in State ex rel. Attorney-General
v. Lindell Railway Co., what is known as the "Third Par-
allel Law" relating to street railways in the city of St. Louis,
Mo., was declared inoperative, overruling two prior decis-
ions of the Supreme Court sustaining it.   But the law of
*stare decisis* can not be applied in the case at bar, because
no decision of the Supreme Court of Missouri exists assert-
ing the right to appeal from a conviction on an information.
A prior decision is controlling only as to the points actually
involved and determined.   The comparative value of a decis-
ion and its weight as a controlling precedent depends upon
whether the point in question was fully argued and carefully
considered, whether it was a case of first impression or
whether it followed a current of earlier decisions.   [Finklen-
burg on Appellate Practice, p. 116.]

The Appellate Jurisdiction of the Supreme Court of
Missouri.

The method of procedure in appellate practice in the
Supreme Court of Missouri depends on statutory provision.
The appellate jurisdiction of the Federal Supreme Court
rests wholly on the acts of Congress.   [144 U. S. 319.]

No Statute is cited giving the Right of Appeal.

The laws of 1825, p. 139, gave the defendant the right of election to have his case, upon information, tried, either before the justice of the peace or in the circuit court, even though the prosecution was begun before a justice of the peace upon an information. This statute of 1825 also expressly authorized an appeal. The statutes of 1835 enlarged the jurisdiction of the justice of the peace, but did not provide for an appeal from a conviction on an information to the Supreme Court, but did, specifically, provide that certain classes of misdemeanors should not be indictable, but should be prosecuted by information, and in this same criminal code of 1835 first appeared any provision for statutory appeal to the Supreme Court in criminal cases, and the statute, enacted as part of the criminal code of 1835, specifically and clearly limited the right of appeal in criminal cases to proceedings upon indictment. This is the provision of 1835: "In all cases of final judgment rendered upon an indictment an appeal to the Supreme Court shall be allowed, if applied for during the term at which such judgment is rendered." This same provision in the same language exists in our statute of 1899. [Revised Statutes 1835, p. 498.]

Would anyone pretend that, looking at the criminal code of 1835, any provision was made for an appeal from a conviction upon an information? Surely not. Counsel for appellant concede that if the Supreme Court of Missouri had, in 1835 or 1840, thus construed this statute to mean that no appeal was allowed from a conviction on an information, the decision would have been correct. Was any decision rendered soon or any time after the enactment of this criminal code of 1835 that construed the criminal code of Missouri of 1835 to authorize an appeal from a conviction on an information? Counsel for appellant admit they can point to not one case so deciding. The criminal code of Missouri,

State v. Thayer.

as to this particular statute and question, has not been changed from 1835 to 1840.

The exact language of the section of 1835, relating to appeals in criminal cases, appears in the Revised Statutes of 1899. Four decisions of our Supreme Court construing this statute and this criminal code have held that no appeal lies. Why is not a decision of the Supreme Court of Missouri, construing this act of 1835, just as binding now as it would have been in 1835, or 1840, or 1845, or 1850 ? Is not the court as able to construe it now as then ? Are the decisions now less entitled to binding force than they were then ? If a decision holding that no appeal existed from a conviction on an information, would have been correct in 1835 or 1840 (as counsel for appellant admit it would), why would it not be correct now ? Four times this court has decided no appeal would lie in such a case. Never has it decided otherwise. But counsel for appellant say the court has passed the question *sub silentio* so often that, although originally no right existed to appeal, yet now the court has lost power to correct its error. Only under the doctrine of *stare decisis* does a court ever get in this position. The counsel know the doctrine of *stare decisis* can not be invoked in the case at bar because no decision of the court exists holding that an appeal can be taken from a conviction on a misdemeanor. The only thing that counsel invoke is the fact that appeals have been taken, and no question raised. Therefore, counsel for appellant argue that the custom has grown into a law, and gravely assert that this "custom" should be repealed by a legislative enactment, and should not, although founded in error, be disturbed by this court. Are the customs running contrary to the express decision of this court to overrule the decisions of the court ? Are customs of greater force in Missouri than the decisions of the highest court ? Is it the written opinion of this court that is the law, or is it the

unofficial professional opinion of the bar or a portion thereof that has the force of authority in Missouri? The Federal Supreme Court hold that the mere passing in silence of the question of jurisdiction will not bind the court, and when the question is raised, the court will pass on it.

## Appeal—Right of.

An appeal previously took the whole case to a higher tribunal, there to be fully tried anew without regard to what was done in the lower court. In England appeals were confined to chancery, admiralty and ecclesiastical proceedings, while a writ of error was the only method of removing a common-law case for review to a higher court. The appeal in chancery brought the facts, as well as the law, before the Superior court, there to be tried *de novo*, while the writ of error in a case at common law brought up nothing for re-examination but the questions of law involved in the record of the case. This was the condition of the common law at the time of the annexation of the Louisiana Territory, and at the time of the admission of Missouri into the Union as a state. An appeal in a law case is purely a statutory right. [Finklenburg on Appellate Courts, p. 46.]

A declaration by statute that the right of appeal shall exist in certain cases denies, by implication, the right to appeal in all other cases. [Durrousseau v. United States, 6 Cranch, p. 312; Ex parte McCardle, 7 Wall. 506.]

At common law a writ of error lay as a matter of right in all civil cases following the common law, while the technical appeal existed only where expressly given by statute. [King v. Hanson, 4 B. & Ald. 519; King v. Stone, 6 East 514; Willis v. Lewis, 5 Irel. (N. C.) 14; Schooner Con. v. Woodward, 2 Ill. 511; Bevins v. Ramsey, 11 How. (U. S.) 185; Lowell v. Spring, 6 Mass. 398; Weatherby v. Johnson,

14 Mass. 420; Com. v. Messenger, 4 Mass. 469; Bowers v. Gorham, 13 Conn. 530.]

Under modern practice the right of appeal is deemed wholly statutory except where expressly secured by the constitution.    [People v. Richmond, 16 Col. 274; Sharp v. Robertson, 5 Gratt (Va.) 518; Norman v. Curry, 27 Ark. 440; Wadsworth v. Davis, 63 N. C. 251.]

Where no legislative mode is provided for bringing up a case appealable by the Constitution, resort may be had to a writ of error.    [52 Cal. 224; 30 Amer. Dec. 551.]    In all other cases the failure of the Legislature to prescribe a mode of appeal specifically is equivalent to declaring that no right to an appeal shall exist.    [McGowan v. Duff, 41 Ill. App. 557; Ward v. People, 13 Ill. 635; In re Story, 120 Ill. 252; Lockman v. Morgan County, 32 Ill. App. 414; McAllister v. Albion, 10 N. Y. 353; Wiscart v. Dauchy, 3 Dall. 326; United States v. Nourse, 6 Peters 470.]

### Legislative Control of Statutory Rights.

Where not granted by the Constitution the right of appeal is purely a privilege, and not a vested right.    [Mayne v. Huntington County, 123 Ind. 132; Davis v. Rupe, 114 Ind. 588; Bryson v. McCreary, 102 Ind. 1; Excelsior Electric Co. v. Chicago Waifs' Mission, 41 Ill. App. 112; Hanna v. Grand Trunk R. R. Co., 41 Ill. App. 116; Ex parte McCardle, 7 Wall. 506; Leavenworth Coal Co. v. Barber, 47 Kan. 29; Hardaway v. Bites, 1 Smed. & M. (Miss.) 657; Porter v. Grisham, 3 How. (Miss.) 75.]

The remedy by appeal, as practiced in this country, is unknown to the common law.    [State v. Clipper, 142 Mo. 476.]

Appeal was a civil law proceeding in its origin, and was introduced therefrom into equity, admiralty and ecclesias-

tical proceedings, and from thence, by statute, into our common law proceedings, and to which it was originally unknown.   [Ohio & Miss. Ry. Co. v. Laurence County, 27 Ill. 50; Hammond v. The People, 32 Ill. 464.]

In order, therefore, that an appeal may be sustained, the right of a party to appeal must be expressly given. [Schooner Constitution v. Woodworth, 1 Scam. (Ill.) 511; Street v. Francis, 3 Ham. (Ohio) 277; Weatherby v. Johnson et al., 14 Mass. 420; 128 Mo. 514.]

Under article 10, Revised Statutes 1899, of practice and proceedings in criminal cases, being that part of the chapter of the statutes relating to appeals and writs of error in criminal cases, section 2696 of article 10, provides:   "In all cases of final judgment rendered upon any indictment, an appeal to the Supreme Court shall be allowed the defendant, if applied for during the term at which such judgment is rendered."   This provides for an appeal upon a judgment against the defendant on an indictment.   Section 2709, of article 10, Revised Statutes 1899, formerly section 4290, Revised Statutes 1889, provides when State may appeal, and is as follows: "When any indictment is quashed, or adjudged insufficient upon demurrer, or when judgment thereon is arrested, the court in which the proceedings were had, either from its own knowledge or from information given by the prosecuting attorney, that there is a reasonable ground to believe that the defendant can be convicted of an offense, if properly charged, may cause the defendant to be committed or recognized, to answer a new indictment; or if the prosecuting attorney prays an appeal to the Supreme Court, the court may, in its discretion, grant an appeal." This section, 2709, was under consideration in the case of State v. Cornelius, March 1, 1898, 143 Mo. 180.   In a proceeding by information of the prosecuting attorney of the St. Louis Court of Criminal Correction against the defend-

ants for maintaining and keeping a common gaming house, on motion of the defendants the information was quashed, and the State appealed to this court, and the court, through GANTT, P. J., said: "The State is restricted in its right of appeal to those cases in which an indictment is quashed or adjudged insufficient upon demurrer, or when judgment thereon is arrested. Revised Statutes 1889, section 4290 (now section 2709, Revised Statutes 1899). Indictment is a technical word, and when used in the constitution of this State and in our statutes must be construed as having been used with the meaning attached to it in common law, to-wit, an accusation preferred by a grand jury of the county wherein the crime was committed. [Ex parte Slater, 72 Mo. 102.] An information by the prosecuting attorney also has a well defined meaning at common law, but differs from an indictment in this, that whereas the indictment is the accusation of a grand jury, an information is only the allegation of the officer who exhibits it." [5 Bacon's Abridgement, 170, 172; State v. Kelm, 79 Mo. 515.] By limiting the right of appeal from judgment holding indictments insufficient on motions to quash, on demurrers and on motions in arrest of judgments, the legislature has denied the right in all other cases, and this court can not write the word "information" into section 4290. The State can only sue out writs of error in cases in which appeals lie on behalf of the State. [Revised Statutes 1889, section 4292.] We have so ruled in State v. Clipper, 143 Mo. 474; State v. Carr, 142 Mo. 607, and with the opinions of SHERWOOD, J., both upon the hearing and motion for rehearing in that cause, we are satisfied. It results that this writ of error, like the appeals in the Clipper and Carr cases, must be dismissed, because we have no jurisdiction to hear it. Writ of error dismissed. *Sherwood* and *Burgess, JJ.*, concur."

I wish to call attention to two statements in this opinion:

First, the opinion expressly holds that by providing only for appeals by the State in certain cases the Legislature has denied the right in all other cases, and this court can not write the word "information" into section 4290 (which is the section allowing appeals by the State).

This statement in this opinion is a correct statement of the law, and is borne out by the decision of the Federal Supreme Court in two cases on precisely the same point relating to the right of appeal. [Durousseau v. United States, 6 Cranch 312; Ex parte McCardle, 7 Wall. 506.]

The court is now asked to construe another section of article 10, Revised Statutes 1899, which gives the right to appeal, not to the State, but to the defendant. It is the opening section of the article in which section 4292, Revised Statutes 1889, construed by the court in 143 Mo. 180, above referred to, occurs. The court is now asked to write into this section the word "information." Counsel for appellant, in his brief and argument, commenting upon this section, which is the same now as it was in the Revised Statutes of 1835, p. 498, says: "If at this time it had been held that an appeal would lie only from a conviction upon an indictment, and not from a conviction in the circuit court in a case appealed from a justice of the peace, it should occasion no surprise, for the language of the section quoted is specific. And if to the term indictment, its technical significance, and only that, is given, clearly the right of appeal would exist only in cases tried upon indictment." This is a frank statement. Our Supreme Court in the Cornelius case, in 143 Mo., above referred to, specifically says that the term " 'indictment' is a technical word, and when used . . . . . . . in our statutes must be construed as having been used with the meaning attached to it at common law, to-wit, an accusation preferred by a grand jury of the county wherein the offense was committed. An information by the prosecuting attorney also has a well

Vol. 158 mo—5

defined meaning at common law, but differs from an indictment in this, that whereas the indictment is the accusation of a grand jury, 'an information is only the allegation of the officer who exhibits it.' ". [State v. Cornelius, 143 Mo. 180.]

This court then construing the word "indictment" in the criminal code of this State with reference to appeals has three times decided that the term must have only its technical significance, and counsel for appellant frankly states that if this significance is given the term, clearly the right of appeal would exist only in cases tried upon indictment. What more authority is there for writing the word "information" into section 2696, Revised Stautes 1899, relating to appeals in behalf of the defendant than there is for writing the word "information" into section 2709, Revised Statutes 1899, relating to appeals in behalf of the State? If the court can not legislate in one instance, why can it legislate in the other? In the case in 143 Mo. p. 180, the court says it indorses what Judge SHERWOOD said in State v. Carr, 142 Mo. 607.

The counsel for appellant in this case urge that section 4062, Revised Statutes 1889, now section 2482, Revised Statutes 1899, provides: "The trial and all proceedings upon any information filed in a court of record shall be governed by the law and practice applicable to trials (not appeals), upon indictment for misdemeanors," and that as appeals are allowable from conviction on an indictment, therefore appeals should be allowed from convictions on an information.

Now in the State v. Carr, 142 Mo. 611, the court discussed this very point, which was then urged by the counsel for appellant as authorizing a right of appeal from a judgment quashing an information, and this court said this section (4062, Revised Statutes 1889, now 2482, Revised Statutes 1899) "evidently relates to trials and their ordinary incidents, when the charge is contained in an information.

It does not relate in the remotest manner to the process of appeal or error. The two ways provided, and the only two ways provided, for that purpose are to be found in the sections heretofore quoted, and they are to be found in article 10 of the same chapter 48, under the appropriate title of Appeals and Writs of Error.

"There was no statute authority in this State for the suing out by the State of a writ of error in a criminal cause until the enactment of section 1988, Revised Statutes 1879, authorizing this to be done. That section has now become section 4292, Revised Statutes 1889 (and now 2711, Revised Statutes 1899). Though that section allows the state to sue out a writ of error, it can only be done in a case in which an appeal would lie on behalf of the State." That is as provided in section 4290, *supra* (now 2079, Revised Statutes 1899). This section no doubt originated in three decisions of this court holding no writ of error could issue at the instance of the State in a criminal cause: State v. Copeland, 65 Mo. 497; State v. Cutter, 65 Mo. 503; State v. Cox, 67 Mo. 46.

To read the word "information" into section 2696, Revised Statutes 1899, authorizing an appeal only from a judgment on an indictment, will necessarily result in the court's having to read it into section 2709, Revised Statutes 1899, authorizing an appeal by the State only when an indictment is quashed or adjudged insufficient on demurrer, or when judgment thereon is arrested. This court said in 142 Mo. 610, the word "information" can not be written into section 2709, Revised Statutes 1899, without judicial legislation. I can not see how it can be written into section 2696, Revised Statutes 1899 (the section authorizing a defendant to appeal from a final judgment on an indictment), without judicial legislation.

It is pertinent here to observe that, while the statute

authorizing the suing out by the State of a writ of error in a criminal case, was first enacted in 1879, the same General Assembly enacted the first law that provided the machinery for carrying on a prosecution by an information in accordance with the provision of the Constitution now in force in Missouri. A prosecution by an information was before that time not known in the statutes of our State. If the General Assembly had intended to allow appeals from conviction on an information, why did they not provide for a writ of error from judgments on an information, when they provided in the same year that they enacted the provision for prosecution by information, for writ of error upon an indictment in behalf of the State? The two statutes were both new and both enacted in the same year by the same General Assembly.

This court can not consistently, in my opinion, legally read the word "information" into section 2696, Revised Statutes 1899, so as to give an appeal from a judgment of conviction on an information.

If this can not be done, then the counsel for appellant seek to get this court to hold that the word "indictment," as used in the statute, allowing a defendant an appeal from a judgment on an indictment (section 2696, Revised Statutes 1899), is broad enough to include the word "information" in its definition. The answer to that argument is, that this court has always given the words "indictment" and "information" their technical common law meaning, and that each has a separate independent technical meaning. [State v. Clipper, 143 Mo. 180.]

The brief of counsel for appellant contends that, as the court has so long assumed jurisdiction, it has, by such assumption, actually acquired jurisdiction.

The proposition is frankly stated that at first, no right of appeal existed from a conviction on an information, but by

assumption of jurisdiction for a period of years, the mere assumption has ripened into a legal right. What results will this principle lead to ? If the Supreme Court of Missouri can acquire jurisdiction not possessed by simply assuming it, why can not a probate court or a county court acquire jurisdiction in the same manner ? If the Supreme Court can acquire jurisdiction in the class of cases under consideration by simply assuming it for a period of years, why can not the probate court of a county acquire the jurisdiction of the circuit court, or the Supreme Court, in classes of cases over which said probate court might claim it wished to assume and exercise jurisdiction for a period of years ?

If one court can assume jurisdiction of a class of cases and then acquire it, of course another court can do the same thing. And if this custom is allowed to be established, soon all the courts will be exercising just such jurisdiction as each sees proper to assume. Certainly this court will not announce the proposition that jurisdiction simply depends on a court's assuming it.

But this is just what the counsel for appellant argue, and in support of this contention cite a long list of cases in which the Supreme Court of Missouri has passed upon the merits of appeals in cases arising upon information, and in which cases the question of jurisdiction is passed *sub silentio*.

Now in the following three cases this court has held that the State can not appeal from a judgment quashing an information, and that the State can only sue out writs of error in cases in which an appeal lies on behalf of the State: State v. Cornelius, 143 Mo. 180; State v. Clipper, 142 Mo. 474; State v. Carr, 142 Mo. 607.

If the argument which counsel for appellant urge as a reason why an appeal should be allowed a defendant from a conviction, to-wit, because so many have been taken without question, is good; then the same argument should hold good

with reference to the right of the State to appeal from a judgment on a motion to quash an information, and the three cases last above cited should be overruled, because many times appeals have been taken by the State from judgments on a motion quashing an information, and the merits of the case without regard to the question of jurisdiction has been passed on by this court and the two courts of appeals. Is this court ready to say the three cases last above cited are wrong?

I cite here a number of cases I have found in the Supreme and Courts of 'Appeal reports, where an appeal has been taken from a judgment on an information, by the State, and the case passed on its merits regardless of the question of jurisdiction.

The case of State v. Ford, 70 Mo. 470, was where the defendant was arrested and subsequently tried before a justice of the peace under a statute making it a misdemeanor to willfully disturb the peace of any person or neighborhood, and was adjudged to pay a fine, and an appeal was taken to the common pleas court where the proceeding was dismissed on the ground that the justice of the peace had no jurisdiction, and then an appeal was taken to this court where the judgment was affirmed, the court here basing its decision on the ground that the statute in question only authorized a civil proceeding, and that the action begun was a criminal one. No question of the right of the State to appeal was raised.

In State v. Kanaman, 94 Mo. 71, a complaint was made by a private citizen before a justice of the peace charging the defendant with a misdemeanor. The defendant was tried and convicted and appealed to the circuit court where the defendant filed a motion to dismiss on the ground that the complaint was filed by a private person. The prosecuting attorney offered to file an amended complaint, which the court refused, and sustained the motion to dismiss, and the

State appealed, and this court held that the action of the circuit court was proper, and nothing was said about the question of jurisdiction.

The case of State v. Kelm, 79 Mo. 515, was a prosecution for petit larceny begun in a justice court on the affidavit of a private citizen. A conviction was had and an appeal to the circuit court occurred, and the circuit court sustained a motion in arrest of judgment, and the State appealed. The Supreme Court held that a conviction could only be had for a misdemeanor before a justice of the peace upon an information, and that the term "information" must be given its technical common-law significance, and in our State an information should be deemed to be such only as in England is presented by the attorney or solicitor general. And that, as our district and prosecuting attorneys had a good many of the powers exercised by the attorney-general and solicitor general of England, that the prosecuting attorneys would have the right to prosecute by information. And the court said: "The framers of the Constitution employed the term 'information,' without more, well understanding its common law import and meaning. And we are not authorized, nor is the Legislature to extend its meaning and use." [State v. Kelm, 79 Mo. 517.]

If this is true how could this court change the definition of the word "information" so as to hold it to be included in the term "indictment" for purposes of appeal?

No right of appeal from conviction on an information existed at common law, and our statute has given none. No question was raised of the right of appeal by the State in the case cited in 79 Mo. 517.

The case of State v. Bliler, 138 Mo. 139, was on an information for book-making and pool-selling, in the criminal court of Jackson county, Mo. The information was quashed. The State appealed, and the case was passed upon by the

Supreme Court and the judgment affirmed.   Section 3 of the act establishing the criminal court of Jackson county provided that appeals should be prosecuted in the same manner and with like effect in all respects as is provided by law in cases of appeals from writs of error to circuit courts in criminal cases.   [Laws of 1871, p. 110.]

The case of State v. Lee, 137 Mo. 143, was an appeal by the State from a judgment sustaining a motion to quash an information in the St. Louis Criminal Court.   The Supreme Court reversed and remanded the case, and the question of jurisdiction was not raised.   The case of State v. Murlin, 137 Mo. 297, was an appeal by the State from a judgment sustaining a motion to quash in a prosecution for a violation of the statute in working a coal mine in Macon county without having shot-firers employed to shoot the shots after the employees and others had left the mine.   The constitutionality of the law was passed upon, and the case reversed and remanded to be again tried.   The case of State v. McCabe, 135 Mo. 450, was an appeal by the State from a judgment quashing an information in the court of criminal correction of St. Louis, Mo.   The court reviewed the record and held that the lower court erred in quashing the information, and reversed and remanded the cause.   State v. Van Brunt, 147 Mo. 20, holds that an appeal will not lie from a judgment quashing an information.

The case of State v. Dinnisse, 109 Mo. 434, was an appeal by the State from a judgment quashing an information in the court of criminal correction of the city of St. Louis, Mo., and the Supreme Court reviewed the record and said the information should have been quashed, and affirmed the judgment.

In the following cases the courts of appeal have entertained cases appealed by the State from judgments on motions to quash the informations:   State v. Pulitzer, 12 Mo. App. 6; State v. Mahaey, 19 Mo. App. 210; State v. McDaniel, 40

Mo. App. 356; State v. Hatfield, 40 Mo. App. 358; State v. Crenshaw, 41 Mo. App. 24; State v. Emberton, 45 Mo. App. 56; State v. Davidson, 46 Mo. App. 9; State v. Graham, 46 Mo. App. 527; State v. Flowers, 56 Mo. App. 502; State v. Murphy, 49 Mo. App. 270; State v. Hart, 47 Mo. App. 653; State v. McCarver, 47 Mo. App. 650; State v. Hynes, 29 Mo. App. 569; State v. Harris, 30 Mo. App. 82; State v. Ristig, 30 Mo. App. 360; State v. Karnes, 51 Mo. App. 293; State v. Baskett, 52 Mo. App. 389; State v. Haley, 52 Mo. App. 520; State v. Morse, 55 Mo. App. 332; State v. White, 55 Mo. App. 356; State v. Gallego, 57 Mo. App. 515; State v. Pruett, 61 Mo. App. 156; State v. Sell, 61 Mo. App. 160; State v. Stanley, 63 Mo. App. 243; State v. Stegall, 65 Mo. App. 243; State v. Smith, 66 Mo. App. 403; State v. Luman, 66 Mo. App. 472; State v. Boos, 66 Mo. App. 537; State v. Fugitt, 66 Mo. App. 625; State v. Sartin, 66 Mo. App. 625; State v. Hocker, 68 Mo. App. 415; State v. Lewis, 70 Mo. App. 40; State v. Hopson, 76 Mo. App. 482.

In all these cases, the Supreme Court and the courts of appeal assumed jurisdiction of the cases appealed by the State from judgments on motion and the merits of the cases were passed upon and no question of jurisdiction was raised. And yet if State v. Cornelius, 143 Mo. 180, and State v. Clipper, 142 Mo. 474, and State v. Carr, 142 Mo. 607, and State v. Van Brunt, 147 Mo. 20, are not overruled, the courts were without jurisdiction to hear the cause, because no appeal would lie. The question of jurisdiction was passed *subsilentio* and jurisdiction was assumed. It was not decided in any of the cases that the court had jurisdiction. How can they be precedents then? Are courts to be so bound by custom that they can not correct mistakes? It matters not what the profession or the courts think the law ought to be, but the question, what is the law, is the point to be decided.

A probate court might unchallenged assume jurisdiction

for twenty years to try criminal cases. Would the right legally to try a criminal case under our Constitution and statutes be acquired in this way by a probate court?

Suppose the circuit court in the fifteenth judicial circuit of Missouri had held for twenty years that no appeal would lie from a final judgment of conviction in said court on an indictment and that its jurisdiction was final and no appeal had been allowed. Would that give the circuit court of the Fifteenth judicial circuit final jurisdiction in such cases? Would that take away the right of appeal? If the right to appeal can be acquired by simply being assumed, why can it not be lost by a court's simply assuming it does not exist in refusing to allow it?

If the assumption of the right to appeal in the number of cases cited by counsel for appellant can establish the right in this court now, how many cases will it have to be assumed in to establish the right ten years from now, when the personnel of this court will perhaps be changed? If the number of cases cited by counsel for appellant assuming the right of appeal exists establishes the right to it in convictions on informations, in how many cases will the right of appeal have to be assumed to exist in other causes of cases in which it is not now authorized by statute before the right can be acquired? Interpretation of a statute does not mean legislation by a court. Courts do not sit to say what the law ought to be, but it is their duty to declare the law as they find it, leaving its wisdom and policy to the Legislature. [54 Mo. App. 310.]

Different Methods of Procedure may exist in Different Localities.

Counsel for appellant recites the fact that an appeal may be allowed from a conviction on an information in the court of criminal correction of St. Louis city, and if it is not allowed from a conviction in other parts of the State, counsel

argue that this would be a remarkable instance of discriminating and unequal legislation.   This question of right to appeal from a conviction for a misdemeanor in one part of the State, and the denial of the right to appeal in another part of the State, was directly before the Supreme Court of Michigan in the case of Sullivan, relator, v. Haug, 10 L. R. A. 263.   This case was an application for a writ of *mandamus* to compel respondent to act upon a bond presented by relator for the purpose of appealing from a judgment of respondent sentencing relator to fine or imprisonment for assault and battery, in the city of Detroit.   The relator was arrested on a warrant issued by the police justice of the city of Detroit, charging him with assault and battery, arraigned, pleaded not guilty, tried, convicted and sentenced to pay a fine of $12 and $3 costs, and in default of such payment that he be imprisoned in the Detroit house of correction for a period of twenty days.   The relator, under the general laws of the State authorizing appeals from courts of justices of the peace, executed a bond in regular form with satisfactory sureties (which fact was conceded by the respondent police justice), and presented the same to respondent for the purpose of appealing said suit to the recorder's court of the city of Detroit, but the police justice refused to accept the same because no section in the police court act authorized the taking of an appeal in a case like this.   The act establishing the police court for the city of Detroit reads as follows:   "In all cases determined in said police court, when the sentence of imprisonment shall exceed twenty days, or when the fine imposed shall exceed $25, the judge of the Recorder's Court of the city of Detroit, or, in case of his absence or inability to act in the premises, then either of the judges of the circuit court having jurisdiction in the city of Detroit, may allow an appeal to the recorder's court upon satisfactory affidavit presented to him in five days after the trial, showing the cir-

cumstances of the trial, and the substance of the evidence
taken thereon, if, in the opinion of the recorder or judge,
justice requires an appeal.   On filing such affidavit, and the
allowance of said appeal indorsed thereon, with the clerk of
the police court, such appeal may be taken in the manner and
with the effect and restrictions prescribed for appeals to the
circuit court in cases of sentences by justices of the peace in
criminal cases:   Provided, that if the appeal is taken on be-
half of a person imprisoned under sentence the recognizance
required by law may be entered into on his behalf by the
surety or sureties on appeal; and such recognizance shall have
the same force and effect in all respects as though entered
into personally by the person so appealing."

The section allowing appeals from justices of the peace in
criminal cases enacts that, "the persons so charged with and
convicted by any justice of the peace of any such offense may
appeal from the judgment of such justice of the peace to the
circuit court:   Provided, said person shall enter into a recog-
nizance to the people of the State of Michigan, in a sum of
not less than $50 nor more than $500, within ten days after
rendition of the judgment, with one or more sufficient
sureties, conditioned to appear," etc.

The relator asked for a *mandamus* to compel the police
justice to file the bond and certify the case to the circuit or
recorder's court chiefly upon two grounds:   First, that all
persons accused of violation of the criminal laws of the State
are of right entitled to the same rights and remedies, regard-
less of locality of the court in which he is tried.   Second,
that the Constitution, having vested the several circuit courts
with appellate jurisdiction over all inferior tribunals, it is
not competent for the Legislature to deprive them of such
appellate jurisdiction.   But the court said:   "What the Con-
stitution guarantees is that the accused shall have the right
to a speedy and public trial by an impartial jury; to be

informed of the nature of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and have the assistance of counsel for his defense; and that he shall not be deprived of life, liberty or property without due process of law. All of these have been accorded to relator. But he complains that to allow a large portion of the citizens of this State the right of appeal to a superior tribunal, and deny, under the same circumstances and conditions, that right to the citizens of Detroit, is a plain violation of the fundamental principle of equality which underlies a republican form of government, and is recognized and guaranteed by the 14th amendment to the Constitution of the United States. We think the position is fully met and answered in the opinion of Mr. Justice BRADLEY, in Missouri v. Lewis, 101 U. S. 30, where, speaking of a similar claim made in that case, he said: 'It is the right of every State to establish such courts as it sees fit, and to prescribe their several jurisdictions as to territorial extent, subject-matter and amount, and the finality and effect of their decisions, provided it does not encroach upon the proper jurisdiction of the United States, and does not abridge the privileges and immunities of citizens of the United States, and does not deprive any person of his rights without due process of law, nor deny to any person the equal protection of the laws, including the equal right to resort to the appropriate court for redress. The last restriction, as to the equal protection of the laws, is not violated by any diversity in the jurisdiction of the several courts as to subject-matter, amounts or finality of decision, if all persons within the territorial limits of their respective jurisdictions have an equal right in like cases, and under like circumstances, to resort to them for redress. Each State has the right to make political subdivisions of its territory for municipal purposes, and to regulate their local government. As respects the administra-

tion of justice, it may establish one system of courts for cities, and another for rural districts, one system for one portion of its territory, and another system for another portion.    Convenience, if not necessity, often requires this to be done, and it would seriously interfere with the power of a state to regulate its internal affairs to deny to it this right.' "

The Legislature, the court held, had a right to provide for an appeal to the recorder's court in certain cases, and not in certain others; that no person has a constitutional right to a second trial after having been duly convicted before a court of competent jurisdiction, by an appeal to another tribunal; neither is there an inherent right to appeal from a judgment of an inferior to a court of superior jurisdiction, for the purpose of securing a second trial upon the merits. The right to an appeal is, and always has been statutory, and does not exist at common law.    It is a remedy the Legislature may, in its discretion, grant or take away, and it may prescribe in what cases and under what circumstances and from what court appeals may be taken. [Sullivan v. Hany, 10 L. R. 265; Constitution v. Woodworth, 2 Ill. 635; Ex parte Mc-Cardle, 74 U. S. 506; Prout v. Berry, 2 Gill 142; State v. Northern Central Ry. Co., 18 Md. 193; Kundinger v. Saginaw, 59 Mich. 355; Demaray v. Little, 17 Mich. 386; Marfield v. Freeman, 39 Mich. 64; Katy v. Centerville, K. G. Mfg. Co., 48 Mich. 133; Michigan Insurance Co. v. Whittemore, 12 Mich. 311; People v. Detroit Police Justice, 7 Mich. 456; Clark v. Raymond, 26 Mich. 415.]

The contention was made in this Michigan case, that to allow appeals in one class of proceedings, or from one portion of the State from an inferior to a superior tribunal and to deny it in another class of cases, or in another portion of the State under the same circumstances and conditions, was a plain violation of the fundamental principle of equality which underlies a republican form of government and which has

been recognized and guaranteed by the 14th Amendment to the Constitution of the United States. But the Supreme Court of Michigan answered this contention by quoting from the opinion of Mr. Justice BRADLEY, in Missouri v. Lewis, 101 U. S. 30, in which the Federal Supreme Court said: "It is the right of every State to establish such courts as it sees fit, to prescribe their several jurisdictions as to territorial extent, subject-matter and amount, and the finality and effect of their decisions. . . . The equal protection of the laws is not violated by any diversity in the jurisdiction of the several courts as to subject-matter, amounts or finality of decision of all persons within the territorial limits of their respective jurisdiction for an equal right in like cases and under like circumstances to resort to them for redress. . . . One system of courts a State may establish for cities and another for rural districts; one system for one portion of its territory and another for another portion of its territory." [Missouri v. Lewis, 101 U. S. 30.]

In Katy v. Centerville, K. G. Mfg. Co., 48 Mich. 133, Mr. Justice CAMPBELL, delivering the opinion of the court, said: "No appeal lies in any case except when given by statute."

That case was a proceeding in chancery for a voluntary dismissal of a corporation. Nothing was said in the statute authorizing such a proceeding, about the right of appeal, and the court held that no appeal could be taken. The court said: "If the legislature possessed this power to grant or take away appeals as a remedy, they may deny it with reference to particular courts created by them, and permit it to others; they may deny appeals from the judgments of the police court and permit it in other portions of the State. An exercise of this power by the legislature has been frequent in both civil and criminal cases. It has made it a crime to take fish from certain streams and localities, while it has been permitted in other portions of the State. It has constantly organized

municipal courts in cities and conferred jurisdiction over crimes and misdemeanors and provided special procedure for such courts which do not obtain outside of their respective jurisdictions."

In People v. Police Justice, 7 Mich. 458, the facts were that justices of the peace had jurisdiction of certain misdemeanors in Detroit; that an act was passed establishing a police court and giving it such power as the justice of the peace theretofore had, and prohibiting a justice of the peace in said city from exercising any power possessed previously. The right of appeal had existed from a conviction before a justice of the peace. The act creating the police court did not provide for an appeal. Subsequently the act authorizing justices of the peace also to try misdemeanor cases in Detroit was re-enacted; the right of appeal was also given. A man was convicted in the police court of a misdemeanor, and an appeal was refused, on the ground that the act creating the police court did not provide for an appeal. He applied for a *mandamus* to compel an appeal to be granted upon the ground that as the police court act gave the police court such power as the justices of the peace theretofore had, and as the right of appeal was given from a justices' court, that therefore, when the law was re-enacted, giving the justices concurrent jurisdiction over misdemeanors in Detroit with the police court, that the right of an appeal was granted from a judgment in the police court because the same proceedings should control in each court. The Supreme Court of Michigan held that the right of appeal from the police court did not exist and said that, "appellate jurisdiction can never be taken by implication; nor does it ever attach to crimes or offenses, but only to judgments and to such judgments and of such tribunals as the law, in express terms, extends it to."

It was argued that the mode of procedure directed to be, and adopted in the police court, was that prescribed in the

statute for justices of the peace for the trial of offenses, and that an appeal was a part of the proceedings prescribed for the control of the justice of the peace courts in trying misdemeanors.    But the Supreme Court, answering that argument, said:    "It may be true that the police court in exercising the jurisdiction conferred upon it by the act of 1850 should adopt the course of proceedings prescribed by chapter 94 for justices of the peace for the trial of offenses; but this, if so, argues nothing in favor of the assumption of jurisdiction by the circuit court; for an appeal is no part of the machinery of the trial in the police court, nor is it a proceeding in that court; and to claim the appellate jurisdiction of the circuit court from the course of procedure in the trial below, is to make such jurisdiction dependent upon the form of trial.    In my judgment such jurisdiction depends neither upon the forms of proceeding, nor upon the character of the tribunal; but upon the express words of the law conferring it."

This decision of the Michigan Supreme Court is in harmony with the decision of the Missouri Supreme Court in the Carr case, 142 Mo. 611, when it decided that the provision of the statute declaring that "The trial and all proceedings upon any information filed in a court of record shall be governed by the law and practice applicable to trials upon indictment for misdemeanors," related only to trials and their ordinary incidents.

The right of appeal does not relate to the trial.    It is no part of the trial.    It is a step to obtain another trial.    It is no part of the procedure or proceedings in the trial of the case.

The Bowman case is an illustration of the doctrine that no appeal will lie unless expressly given.    The relator, Bowman, was disbarred by the St. Louis Circuit Court, and the

Vol. 158 mo—6

Court of Appeals affirmed the judgment and refused an appeal to the Supreme Court, because the Constitution and laws of Missouri creating the St. Louis Court of Appeals did not expressly provide for an appeal in this kind of case, although in such a proceeding in any other county of the State except in those embraced in the original St. Louis Court of Appeals district, an appeal would lie directly to the Supreme Court. An application was made to the Supreme Court of Missouri for a *mandamus* to compel the St. Louis Court of Appeals judges to grant an appeal, and the Missouri Supreme Court refused the writ, and on a writ of error being taken to the Federal Supreme Court, that tribunal affirmed the decision of the Missouri Supreme Court. This case holds that no appeal lies in any case unless given by statute, and that no Constitutional guarantee is violated by denying an appeal.

The Constitution of Missouri does not expressly give the right of appeal in a prosecution upon an information. No constitutional right is therefore violated by no appeal being allowed. The provisions of the Constitution of Missouri relating to the jurisdiction of the Supreme Court are exactly the same as the Michigan Constitution. The Supreme Court of Michigan, construing this provision of the Constitution, relating to the appellate jurisdiction of the Supreme Court said: "Except in cases specifically mentioned, as in original writs, the Supreme Court's jurisdiction was appellate, but it obtained no jurisdiction of cases by appeal except where the legislature allowed an appeal." [10 L. R. A. 266.]

For the reasons hereinbefore given, I believe the prior decisions of the Supreme Court of Missouri correct, and that no appeal should be allowed in this class of cases.